**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 1, 2001**

CLAUDIA MICHALSKI and MICHAEL MICHALSKI,

    Plaintiffs-Appellees,

v

        No. 114107

REUVEN BAR-LEVAV, M.D. and DR.
REUVEN BAR-LEVAV & ASSOCIATES, P.C.,

    Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

Following a motion for summary disposition brought pursuant to MCR 2.116(C)(10), plaintiff's Handicappers' Civil Rights Act claim was dismissed by the circuit court.[1] The Court of Appeals reversed. The issue before this Court is

---

[1] In 1998, after plaintiff filed her claim, the name of the act was changed to the Persons with Disabilities Civil Rights Act. 1998 PA 20, MCL 37.1101; MSA 3.550(101). This opinion will refer to the act as the Handicappers' Civil Rights Act.

whether the Court of Appeals properly concluded that plaintiff presented sufficient evidence to create a question of fact with respect to whether defendant regarded her as having a determinable physical or mental characteristic that substantially limited one or more of her major life activities. We hold that plaintiff did not present sufficient evidence to create such a question, and we reverse the judgment of the Court of Appeals on this issue.

I

On September 1, 1995, plaintiff signed an employment contract with defendant to begin work as an executive secretary on September 11, 1995.[2] On September 4, 1995, plaintiff experienced numbness and tingling on her left side, which persisted for four days. She was seen by her family doctor, who referred her to Dr. Green, a neurologist. Plaintiff was able to begin work as scheduled. On September 23, 1995, plaintiff saw Dr. Green, who told her he suspected multiple sclerosis, but was unable to make a positive diagnosis at that time. Plaintiff testified at her deposition that she told defendant and others at the office about this tentative diagnosis. Plaintiff maintains that, after she

_____

[2] For convenience, we will refer to Claudia Michalski as the "plaintiff" and Reuven Bar-Levav as the "defendant." Additionally, we note that we have been informed that defendant Bar-Levav is deceased. However, there has been no request to substitute his estate as a party.

2

revealed her condition, defendant undertook a course of harassment, which she attributed to his perception of her medical condition.[3]

Dr. Green saw plaintiff again on October 28, 1995. At this time, plaintiff had no symptoms of multiple sclerosis, and Dr. Green indicated on her medical record that she was "doing fine, feels great." Plaintiff continued to work without incident until December 28, 1995, when she left work, experiencing a loss of vision in one eye. She was seen by Dr. Green, who diagnosed multiple sclerosis. She was hospitalized for three days, and her vision improved after treatment. However, she did not return to work.

Plaintiff brought this action alleging a violation of the Handicappers' Civil Rights Act (HCRA) and a claim for intentional infliction of emotional distress.[4] After discovery, defendant moved again for summary disposition pursuant to MCR 2.116 (C)(10).[5] The circuit court granted the

---

[3] Defendant maintained that he was unaware of her medical condition until after she left work on December 28, 1995.

[4] The circuit court granted summary disposition for defendant on the intentional infliction of emotional distress count. The Court of Appeals affirmed that ruling, and no issue regarding this claim is involved in this appeal.

[5] Defendant first moved for summary disposition on December 9, 1996. The trial court initially denied defendant's motion regarding the HCRA claim without prejudice.
(continued...)

motion, concluding:

> [T]here is no evidence that the condition that Plaintiff was perceived to have was a condition which substantially limits one or more for [sic] major life activities. And no evidence to suggest that the Defendant had any knowledge that one or more of the major life activities was limited.

On January 26, 1999, the Court of Appeals issued a two-to-one decision affirming the dismissal of the intentional infliction of emotional distress count, but reversing the dismissal of plaintiff's handicap discrimination claim because it believed that plaintiff had presented sufficient evidence to establish a prima facie case of handicap discrimination.[6] Relying on *Sanchez v Lagoudakis*,[7] plaintiff argued that one could find that her condition was a handicap as defined by the statute because the HCRA prohibits discrimination, even when an individual does not exhibit symptoms of a handicap. A majority of the Court of Appeals agreed.

Noting that under *Sanchez*, the focus is on the employer's conduct and belief or intent, and not merely on the employee's condition, the majority reasoned that the mere fact that

---

[5](...continued)
Following the completion of discovery, defendant filed a renewed motion for summary disposition on April 11, 1997.

[6] Unpublished opinion per curiam, issued January 26, 1999 (Docket No. 204033).

[7] 440 Mich 496; 486 NW2d 657 (1992); *Sanchez v Lagoudakis (On Remand),* 217 Mich App 535; 552 NW2d 472 (1996), rev'd on other grounds *After Remand* 458 Mich 704; 581 NW2d 257 (1998).

plaintiff was symptom free should not preclude her cause of action. The Court of Appeals explained that an "individual with multiple sclerosis can lead a normal life until the next exacerbation, which occurs with varying frequency and degree." Similarly, individuals with handicaps such as epilepsy and asthma may have periods of time where they are symptom free. Although plaintiff was not definitively diagnosed with multiple sclerosis, the Court of Appeals reasoned that applying *Sanchez*, in which the defendant based his employment decision on rumors that the plaintiff had AIDS, there was sufficient evidence to establish that in the present case, defendant may have regarded plaintiff as handicapped. The Court of Appeals noted that plaintiff's deposition testimony established that she informed defendant from the beginning of her employment that her doctors suspected she had multiple sclerosis. Further, plaintiff periodically took some time off during September and October 1995 to undergo testing for multiple sclerosis and to receive treatment to lessen the side effects of some of the testing procedures. Therefore, the Court of Appeals concluded that the trial court had erred in granting summary disposition in defendant's favor.

Judge Whitbeck dissented. His dissent focused on the fact that the definition of "handicap" was altered by a 1990

5

amendment to the HCRA[8] to require that the physical or mental characteristic in question substantially limit one or more major life activities of the individual.  The version of the statute in effect at the time of the events in *Sanchez* did not include this requirement; thus, it was improper for the majority to rely on that case as support for its conclusion. The dissent reasoned that, under the applicable version of the HCRA, the plain language of the statute required defendant to perceive plaintiff as having a characteristic that substantially limited a major life activity.  Because plaintiff did not present any evidence that defendant regarded her as having a condition that substantially impaired a major life activity, the dissent concluded that summary disposition was properly granted.

This Court granted leave to appeal.  461 Mich 1020 (2000).

II

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is subject to de novo review.  *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999).  In reviewing a motion for summary disposition under MCR 2.116(C)(10), the court considers the pleadings, affidavits, and other documentary

_____

[8] See 1990 PA 121.

6

evidence filed in the action or submitted by the parties in the light most favorable to the nonmoving party. The motion is properly granted if the documentary evidence presented shows that there is no genuine issue with respect to any material fact and the moving party is therefore entitled to judgment as a matter of law.

The HCRA provides that "[a]n employer shall not . . . [d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap[9] that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b); MSA 3.550(202)(1)(b). To establish a prima facie case of handicap discrimination, a plaintiff must demonstrate that (1) he is handicapped as defined by the HCRA, (2) the handicap is unrelated to his ability to perform the duties of his job, and (3) he was discriminated against in one of the ways described in the statute. *Chmielewski v Xermac, Inc*, 457 Mich 593, 602; 580 NW2d 817 (1998).

The act, as amended in 1990, defines handicap for employment related purposes as follows:

> (i) A determinable physical or mental

---

[9] The 1998 amendments of the act substituted the word "disability" for the word "handicap" throughout the act. 1998 PA 20.

7

characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

* * *

(ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

(iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i). [MCL 37.1103(e); MSA 3.550(103)(e).][10]

Relying on subsection (iii), plaintiff argued that defendant undertook a course of harassment because he perceived her as handicapped. Thus, resolution of this matter requires us to construe this subsection of the statute.

Where statutory language is clear and unambiguous, its plain meaning reflects legislative intent, and judicial construction is not permitted. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 217; 580 NW2d 424 (1998). In this case,

---

[10] Following the 1998 amendments to the act, the substance of MCL 37.1103(e); MSA 3.550(103)(e) is now found in MCL 37.1103(d); MSA 3.550(103)(d). Apart from substituting the word "disability" for the word "handicap," the subsections are identical.

8

we find that the statutory language is clear and unambiguous.

Considering the statute in its entirety, to qualify for protection under subsection (iii), an employee must be "*regarded as having* a determinable physical or mental characteristic," as that characteristic is described in subsection (i) (emphasis added). Subsection (i)(A) describes the determinable physical or mental characteristic as one that "*substantially limits* 1 or more of the major life activities of that individual . . . ." (emphasis added). The characteristic must also be unrelated either to "the individual's ability to perform the duties of a particular job or position" or to "the individual's qualifications for employment or promotion."

Thus, while a plaintiff need not actually have a determinable physical or mental characteristic, to qualify as handicapped under subsection (iii), the plain statutory language does require that the plaintiff prove the following elements: (1) the plaintiff was regarded as having a determinable physical or mental characteristic; (2) the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities; and (3) the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's

qualifications for employment or promotion.[11]  Only the first two elements are at issue in this case.

We agree with the Court of Appeals dissent that reliance on *Sanchez* as support for the conclusion reached by the Court of Appeals majority is misplaced.  The version of the HCRA in effect at the time of the events in *Sanchez* contained no requirement that the determinable physical or mental characteristic substantially limit a major life activity. Thus, under the pre-1990 version of the statute, a plaintiff only needed to be regarded as having a determinable physical or mental characteristic.[12]

Finally, we note that the phrase "regarded as having," found in subsection (iii), and the phrases "substantially limits" and "is unrelated" found in subsection (i)(A), all appear in the present tense.  Depending on whether a plaintiff is proceeding under the "actual" or "regarded as" portions of the statute, because of the Legislature's choice of present tense language in defining the term handicap, we must evaluate the physical or mental characteristic at issue either (1) as

---

[11] Contrary to the dissent's assertion, this test does not require plaintiff to demonstrate that she actually exhibited symptoms typical of multiple sclerosis.

[12] Although the dissent purports to be giving effect to every phrase, clause, and word of the statute, its analysis essentially reads the "substantially limits" requirement out of the statute.

it actually existed at the time of the plaintiff's employment,[13] or (2) as it was perceived at the time of the plaintiff's employment.

Thus, to qualify for coverage under subsection (iii), plaintiff must be regarded as presently having a characteristic that currently creates a substantial limitation of a major life activity.[14]  In this case, plaintiff did not

---

[13] See *Chmielewski*, *supra*.  The issue presented in *Chmielewski* was whether, in determining if a person was handicapped under the act, "the trier of fact should assess the individual without the benefit of medication or other mitigating measures, or if it should assess the individual's condition as it presently exists with the benefit of such measures." *Id*. at 595.  Focusing on the statute's requirement that the individual's condition substantially limits a major life activity, the Court held that it must examine the plaintiff's condition as it exists, with the benefit of his medication.  *Id*. at 606-607.

Assessing an actual handicap at the time of employment is consistent with the federal approach under the Americans with Disabilities Act (ADA).  In *Sutton v United Air Lines, Inc*, 527 US 471, 482-483; 119 S Ct 2139; 144 L Ed 2d 450 (1999), the Court stated that "[a] 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could' or 'would' be substantially limiting . . . ."  Because of the similarities between the HCRA and the ADA, analogous federal precedent may be persuasive, although not necessarily binding.  *Chmielewski*, *supra* at 601-602.

[14] The dissent criticizes our focus on the present-tense language of the statute.  We remind the dissent that while it may seem incongruous that the HCRA does not provide protection against discrimination on the basis of a possibility that one might become handicapped in the future, our duty is to apply the law.  As the author of the dissent observed in her discussion concerning the scope of the Whistleblowers' Protection Act:

(continued...)

11

present any evidence to create a question of fact regarding whether defendant regarded her as having a characteristic that substantially limited a major life activity at the time she was his employee. She presented no evidence that Dr. Bar-Levav regarded her as unable to perform basic tasks of ordinary life. Indeed, from all indications, she was physically capable of performing her job duties. At most, plaintiff presented evidence that she informed defendant that she had been tentatively diagnosed with multiple sclerosis and that he believed that this might substantially limit her major life activities in the future. Thus, the trial court properly granted summary disposition on plaintiff's claim that she was regarded as handicapped under the HCRA.

Although plaintiff also argued in the Court of Appeals that she was actually handicapped pursuant to subsection (i)

---

[14](...continued)
The Legislature could have defined protected activity to include confrontation, as in the False Claims Act. It could have allowed employees to recover without a showing of reporting or being about to report. It did neither. Instead, the Legislature defined protected activity as reporting a violation or being about to report one. The Legislature can and may rewrite the statute, but we will not do so. [*Chandler v Dowell Schlumberger, Inc,* 456 Mich 395, 405-406; 572 NW2d 210 (1998).]

Consequently, while the Legislature may, and perhaps should, amend the HCRA to include within its scope of protection discrimination based on the possibility of a future handicap, we decline to do so by construing the HCRA in a manner inconsistent with its plain language.

12

of the HCRA, the Court of Appeals did not address this argument. Therefore, we remand this case to the Court of Appeals for consideration of plaintiff's actual handicap theory.

## III

In conclusion, we find that, in order to succeed on a claim brought under subsection (iii), the plain language of the statute requires an employee prove (1) that the employee was regarded as having a determinable physical or mental characteristic, (2) that the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities, and (3) that the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion.

Moreover, depending on whether the claim is brought under subsection (i) ("actual" handicap) or subsection (iii) ("perceived" handicap), because of the present-tense language used in the statute, courts must evaluate the physical or mental characteristic at issue either (1) as it actually existed at the time of the plaintiff's employment, or (2) as it was perceived at the time of the plaintiff's employment.

Because plaintiff failed to present sufficient evidence

to create a question of fact regarding whether the defendant regarded her as having a characteristic that substantially limited one or more of her major life activities, we reverse the Court of Appeals and reinstate the trial court's ruling granting summary disposition in defendant's favor on plaintiff's claim that she was regarded as handicapped pursuant to subsection (iii). We remand to the Court of Appeals for consideration of plaintiff's actual handicap theory.

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

STATE  OF  MICHIGAN

SUPREME COURT


CLAUDIA MICHALSKI and MICHAEL J.
MICHALSKI,

    Plaintiff-Appellees,

v                                   No. 114107

REUVEN BAR-LEVAV, M.D., and
DR. REVEN BAR-LEVAV &
ASSOCIATES, P.C.,

    Defendant-Appellants.
_____

KELLY, J. (*dissenting*).

    I disagree with the majority's conclusion that the trial

court correctly granted defendants' motion for summary

disposition. Plaintiffs have submitted sufficient evidence to

create a genuine issue of fact whether Dr. Bar-Levav

discriminated against Ms. Michalski because he thought she was

handicapped. Accordingly, I dissent from the majority's

opinion.

    Plaintiffs brought their claim pursuant to the Michigan

Handicappers' Civil Rights Act (HCRA).[1]  The HCRA prohibits

_____

    [1]MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*  The HCRA
has been renamed the Persons With Disabilities Civil Rights
                                         (continued...)

employment discrimination on the basis of a handicap. Its definition of a handicap includes "[b]eing regarded as having a determinable physical or mental characteristic" that "substantially limits 1 or more of the major life activities of that individual . . . ." MCL 37.1103(e); MSA 3.550(103)(e). When an employer discriminates against an employee because the employer perceives the employee as handicapped, the employer is in violation of the HCRA. See *Sanchez v Lagoudakis*, 440 Mich 496; 486 NW2d 657 (1992), (On Remand) 217 Mich App 535; 552 NW2d 472 (1996), rev'd on other grounds after remand 458 Mich 704; 581 NW2d 257 (1998).

In interpreting the scope of subsection (iii) of the HRCA using a narrow "present tense" standard, the majority gives it a meaning that the Legislature could not have intended. This Court has declined to embrace a literal construction of statutory language where such literalism would produce unreasonable and unjust results inconsistent with the purpose of the statute. *DiBenedetto v West Shore Hospital*, 461 Mich 394, 403-404; 605 NW2d 300 (2000). In disregard of this principle, the majority concludes that, to discriminate under the statute, an employer must perceive that its employee has a condition that, at the time, substantially limits a major

---

[1](...continued)
Act. *See* 1998 PA 20.

life activity.  Under this interpretation, if the employer discriminated against the employee for having a condition that would develop into a handicap in the future, it would not violate subsection (iii).  No violation of the act would occur if the employer discriminated against the employee because the employer perceived that the employee had a condition that presently was becoming a handicap.

The majority notes that the HRCA was amended in 1990. The amendments effected a slight change in the definition of a disability, but did not alter the well-settled purpose of the act. They did nothing to change the legislative intent or the breadth of the "regarded as" prong as stated in the act and described in *Sanchez, supra*. Under *Sanchez*, this Court determined that a plaintiff need not display symptoms of a handicap to be protected by the act. Rather, subsection (iii) is violated if an employer discriminates because it believes the employee is handicapped, even if the belief is erroneous.

The majority's "present tense" rendering of subsection (iii) whittles the "regarded as" prong down to a nubbin. It leaves a subsection (iii) claim virtually indistinguishable from a claim under subsection (i).

Subsection (i) extends protection to those who have an "actual handicap." In order to prevail under that subsection, an employee must show that he suffers from the symptoms of an

actual disease that impedes work.  In addition, the employer must be shown to have based an adverse employment decision on that fact. Subsection (iii) addresses situations where an employer is erroneous in believing that the employee has a disability. But, under the majority's standard, what would a plaintiff have to prove to recover under subsection (iii)?

For example, Ms. Michalski could not succeed merely by showing that Dr. Bar-Levav took an adverse action against her because (1) he perceived that she was in a dormant stage of MS and that (2) his perception was that she was becoming handicapped. Under the majority's "present tense" test, she would have to show that (1) she actually exhibited symptoms typical of MS, (2) her employer perceived them as limiting her life activities, and (3) acted on that perception by taking adverse action against her.

Additionally, despite being required to prove the manifest existence of actual symptoms, to succeed under subsection (iii), plaintiff would have to show an absence of the perceived handicapping disorder. Indeed, if she actually suffered from the handicap, recovery would be available under subsection (i), obviating any need for subsection (iii). Hence, the majority's holding leaves such a narrow avenue for recovery under subsection (iii) that it renders the "regarded as" prong of the HCRA a virtual dead letter.

Courts must, as far as possible, give effect to every phrase, clause, and word of a statute. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999). Moreover, courts should avoid unnecessarily reading any portion of a statute out of existence because of rigid adherence to the doctrines of literalism and plain meaning. See, e.g., *Lane v Pena*, 518 US 187, 199-200; 116 S Ct 1092; 135 L Ed 2d 486 (1996) (rejecting petitioner's invitation to read certain language out of the federal Rehabilitation Act); *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130, 137; 523 NW2d 791 (1994)(declining to "read out of existence" the word "crosswalks" from the highway exception to Michigan's governmental immunity statute); *Nalepa v Plymouth-Canton Community School Dist*, 207 Mich App 580, 588; 525 NW2d 897 (1995)(rejecting an interpretation that "would read subsection 5 of the governmental immunity act out of the statute entirely").

The Legislature could not have intended the literal "present tense" interpretation embraced by the majority. It is in derogation of established principles of statutory construction.

A better view would recognize that it is immaterial whether an employer who perceives an employee as having a substantial limitation, believes it to be "present" or

5

"future." If the employer discriminates because it perceives the employee is handicapped or is becoming handicapped, it violates subsection (iii) of the act. Thus, subsection (iii) should be interpreted to contemplate a finding of discrimination for adverse acts against an employee arising from (1) an employer's perception of a handicap and (2) the perception that the handicap threatens work, even in the future.

The definition of "handicap" used in the HCRA is similar to that used in the federal Americans With Disabilities Act (ADA). ADA case law and regulations can be guides for us in interpreting the HCRA. See *Stevens v Inland Waters, Inc*, 220 Mich App 212, 216-217; 559 NW2d 61 (1996). In *Sutton v United Airlines*,[2] the United States Supreme Court stated:

> There are two apparent ways in which individuals may fall within this statutory definition:(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

The Court then identified that an individual may fall

---

[2] 527 US 471, 489; 119 S Ct 2139; 144 L Ed 2d 450 (1999).

6

within the definition in another way. The ADA, it said, also protects individuals "who are regarded as impaired and who, as a result, are substantially limited in a major life activity." *Id*. at 489, quoting *School Bd of Nassau Co* v *Arline*, 480 US 273, 284; 107 S Ct 1123; 94 L Ed 2d 307 (1987).  In other words "having such an impairment means . . . [having] a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment . . . ."  29 CFR 1630.2(l)(2).

In the Michalskis' case, we are reviewing a trial court's decision to grant summary disposition.  We must consider all the evidence and draw all reasonable inferences in the Michalskis' favor.  *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995).

The majority has acknowledged that "[Ms. Michalski] informed defendant that she had been tentatively diagnosed with multiple sclerosis and that he believed that this might substantially limit her major life activities in the future." Federal law considers MS a physical impairment,[3] and there is no dispute here that it qualifies as a physical characteristic under the Michigan statute.

Plaintiffs presented Dr. Bar-Levav's own testimony that he recognized MS as a degenerative neurological disease with

---

[3]*See* 45 CFR pt 84, app A.

an outcome that can be "very bad." They alleged that, after learning that Ms. Michalski was suspected of having MS, Dr. Bar-Levav routinely criticized and berated her work, speech and appearance. When she complained of her symptoms, they asserted, he told her that God was punishing her.

Considering the factual allegations and supporting documents in a light most favorable to plaintiffs, I would find that a jury could infer that defendant regarded Ms. Michalski as handicapped. In addition, it could conclude that she was not handicapped and that defendant acted on his faulty perception in violation of the HCRA.

Plaintiffs created a genuine issue of material fact concerning whether Dr. Bar-Levav erroneously regarded Ms. Michalski as substantially limited in a major life activity because he believed her afflicted with MS. Thus, I would affirm the Court of Appeals reversal of the trial court grant of summary disposition and would remand this case to the trial court for further proceedings.

CAVANAGH, J., concurred with KELLY, J.

8