*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOST LAKE DISTILLERY, LLC, and 605, LLC,

Plaintiffs-Appellants,

v

ATAIN INSURANCE COMPANY, PETER J. STATON, CONCEPT INSURANCE AGENCY, LLC, and BURNS & WILCOX, LTD,

Defendants-Appellees.

UNPUBLISHED
September 17, 2020

No. 346552
Wayne Circuit Court
LC No. 17-010963-CB

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Lost Lake Distillery, LLC ("Lost Lake") and 605, LLC ("605"), appeal by right the trial court's order granting defendant Atain Insurance Company's motion for summary disposition. The appeal also involves the trial court's previous order, which granted summary disposition in favor of defendants, Concept Insurance Agency ("Concept"), Peter J. Staton, and Burns & Wilcox, Ltd ("B&W"). We affirm.

## I. FACTS

On October 27, 2016, a fire damaged property at 142 Maple St. in Wyandotte, Michigan. The property was owned, subject to a land contract, by 605 and was leased to Lost Lake, both of which are solely owned by Richard Alex Bohl. The property was insured though Concept, owned by Staton, which obtained a series of policies from B&W on behalf of Atain. The first four policies had varying term lengths of one year, three months, six months, and three months.[1] Before the expiration of each policy, B&W sent inquiries to Concept asking whether renewals would be

---

[1] The policies had the following coverage dates: (1) October 16, 2014, through October 16, 2015; (2) October 16, 2015, through January 16, 2016; and (3) January 16, 2016, through July 16, 2016; and (4) July 16, 2016, through October 16, 2016.

needed. After being prompted by B&W, Concept asked Bohl about renewing, and Bohl agreed to a renewal policy in each instance. However, leading up to the expiration of the fourth policy on October 16, 2016, B&W did not ask Concept about renewing. In turn, Concept never asked Bohl about renewing, and consequently, Bohl never initiated any renewal. The policy lapsed on October 16, 2016, and a fire broke out on the property on October 27, 2016.

The day after the fire, October 28, Concept contacted B&W and asked about renewing the expired policy, such that it was backdated to October 16. No one from Concept ever mentioned that a fire had occurred, B&W never asked for a statement of no-loss, and a new policy was issued on behalf of Atain, effective October 16, 2016, and expiring April 16, 2017. On November 2, the day after Bohl paid the premium for this latest policy, a claim was submitted on that new policy for the fire damage. The claim listed Staton as the person who was submitting the claim, and the date of loss was listed as October 30.[2] Atain, the insurer, later denied coverage and rescinded the policy on the basis of fraud.

Plaintiffs brought suit against defendants, but the trial court granted summary disposition under MCR 2.116(C)(10) in favor of all defendants. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the proper interpretation of a contract, questions of law such as whether a defendant owes a duty to a plaintiff, and a trial court's decision on a motion for summary. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001); *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011); *Titan Ins Co v Hytan*, 491 Mich 547, 553; 817 NW2d 562 (2012). When deciding whether summary disposition is proper under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Greene v A P Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). A motion brought under MCR 2.116(C)(10) is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

## III. BREACH OF CONTRACT

Plaintiffs first argue that the trial court improperly granted summary disposition in favor of Atain on plaintiffs' breach-of-contract claim. We disagree.

A false statement of a material fact is a ground to void or rescind a policy, regardless of the intent of the person making the false statement. *Titan Ins Co*, 491 Mich at 555-558. An insurer can waive its right to rescind a contract when, upon learning of fraud in the procurement of the policy, the insurer opts to cancel a policy, rather than rescind it. *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517-518; 540 NW2d 480 (1995). However, an insurer cannot waive its right to seek traditional common-law remedies based on misrepresentations in an insurance application,

---

[2] Staton, the owner of Concept and an insurance agent, denied submitting the claim. However, this question of fact is not material to the issues on appeal.

including rescission, based on facts it does not know, even if it could have "easily ascertained" the misrepresentation. *Titan Ins Co*, 491 Mich at 571.

On March 29, 2017, Atain rescinded the policy on account of fraud. Plaintiffs contend that Atain waived its right to rescind the policy because Atain's rescission was untimely, and therefore impermissible. Plaintiffs note that on February 2, 2017, Atain issued a notice of nonrenewal of the policy, without any indication that it intended to rescind the policy at that time. When Atain issued the notice of nonrenewal, it was not issued because of any known fraud; instead, it was because of the existence of the claim. As the trial court noted, there was no evidence to show that Atain knew of the fraud[3] at the time it issued the notice of nonrenewal on February 2, 2017.

Plaintiffs claim that Atain knew about the fraud as of February 10, 2017. Plaintiffs rely on a letter written by Atain's counsel, Michael Spinazzola, referring to the loss date as being October 27, 2016. That letter was in response to a subrogation claim made by owners of neighboring units that were affected by the fire. Spinazzola testified that he was not aware of any date discrepancy and was unaware of the possibility of October 30 being the date of loss. Further, the letter merely states that the subrogation claim had been assigned to Spinazzola and that Atain "[i]s conducting an immediate investigation" of the claim. The letter's isolated reference to the date of loss as October 27, 2016, is insufficient to allow a fact-finder to infer that Atain had actual knowledge of any fraudulent activity as of the date of the letter.

Even assuming that Atain knew about the fraud as of February 10, February 10 is after February 2. The fact that other entities or people working with or for Atain's benefit were aware that October 27 might have been the actual date of loss does nothing to show that Atain knew of any fraudulent activity at that time.[4] As a result, Atain's issuance of the notice of nonrenewal was not a decision on how to remedy the fraud, which it had not yet discovered.

Plaintiffs argue that an insurer's knowledge of fraud can be constructive or aggregated. In other words, by showing that one person at Atain had one piece of information and other people at Atain had other information, this combined information was sufficient to show that it had knowledge that fraud had occurred. Plaintiffs provide no authority to support this position, and our Supreme Court has stated that it is not enough merely to show that the insurer could have easily

---

[3] There are two instances of fraud or misrepresentation present. The first is when Concept sought the backdated insurance policy and did not disclose that a fire had occurred the day before it made the request. The second instance is when the claim listed October 30 as the date of loss instead of the correct date of October 27.

[4] Plaintiffs note that the independent adjuster assigned to work on the claim, Paul Curtis, received a cause and origin report on December 8, 2016, which included a report from the fire department noting the date of the fire as October 27, 2016. But Curtis testified that he did not read the report, and again, any knowledge of Curtis cannot constitute knowledge that Atain knew of any fraudulent activity. Curtis testified that never expressly reported any discrepancies in the dates of loss and that he did not send his report to Minuteman Adjusters, the entity that Atain had hired, which in turn hired him, until March 1, 2017.

ascertained the misrepresentation. *Titan Ins Co*, 491 Mich at 571.

Plaintiffs further argue that the Atain should be estopped from rescinding the policy due to the delay of nearly six weeks from when Atain purportedly first learned of the fraud on February 10, 2017, to when it finally rescinded the policy on March 29, 2017. "A defrauded party who seeks to rescind must act with reasonable promptness *after discovering the facts*." *Gyles v Stadel*, 252 Mich 349, 351; 233 NW 339 (1930) (emphasis added). "The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded." *Hall-Doyle Equity Co v Crook*, 245 Mich 24, 29; 222 NW 215 (1928) (internal quotes and citation omitted). Plaintiffs have not shown that Atain unreasonably delayed in seeking rescission after discovering plaintiffs' misrepresentation. Therefore, the trial court did not err by granting Atain's motion for summary disposition on the breach-of-contract claim.

## IV. NEGLIGENCE

Plaintiffs next argue that the trial court improperly granted summary disposition in favor of Concept, Staton, and B&W on plaintiffs' negligence counts against them. The trial court granted summary disposition in favor of these defendants because the court determined that they owed no legal duty to plaintiffs to ensure that the policy remained in effect. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993) (to establish a claim of negligence, a plaintiff must prove that the defendant owed a legal duty to the plaintiff, that the defendant breached that duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered). This was not in error.

## A. CONCEPT AND STATON

Concept is an independent insurance agency, and Staton is an agent within that agency. As independent insurance agents, they are considered agents of the insured rather than agents of the insurer. *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 656; 760 NW2d 259 (2008). As such, "their primary duty of loyalty rested with plaintiffs, who could depend on this duty of loyalty to ensure that defendants were acting in their best interests both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs." *Id*.

Plaintiffs suggest, without citation to any legal authority, that this principle imposes a duty to warn of the pending expiration of an insurance policy. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Furthermore, the duty to ensure that a particular contract addresses an insured's needs is distinct from a purported duty to warn that a particular policy is about to expire. There is no contention that the policies that Staton and Concept did procure inadequately addressed plaintiffs' needs by way of coverage limits, coverage exceptions, etc. Absent any evidence that plaintiffs sought a longer length of term for coverage, plaintiffs cannot show how Concept and Staton had any duty to take steps to ensure that the property was insured beyond October 16, 2016. Plaintiffs contend that "Concept/Staton had a continuous obligation to ensure [that plaintiffs] received the insurance coverage they *specifically requested*." (Emphasis added.) However, there is no

evidence that Concept and Staton did not provide insurance coverage that plaintiffs had "specifically requested." See also 3 Couch, Insurance, 3d, § 46.28 ("The insured's agent must strictly follow the insured's instructions which are clear, explicit, absolute, and unqualified.") and § 46.62 ("An agent or broker is not liable to the insured for failing to procure insurance when there was no binding contract obligating him or her to do so."). Plaintiffs cite no evidence indicating that they had "specifically requested" coverage past the October 16, 2016 date, and we have found none.[5] Therefore, while they may have voluntarily done so in the past, they had no duty to warn or remind plaintiffs of the upcoming October 16, 2016 expiration date of the policy, or otherwise procure coverage past the October 16, 2016 date. Thus, summary disposition was properly granted in favor of Concept and Staton.[6]

## B. B&W

With regard to B&W, plaintiffs argue that because Concept had a duty to plaintiffs, B&W necessarily did as well because B&W was a subagent of Concept. Because we conclude that Concept owed no duty to remind plaintiffs of policy expiration dates or otherwise procure coverage past October 16, 2016, the predicate for plaintiffs' argument is wanting. Additionally, there is no evidence to suggest that B&W was a subagent of Concept, which would have resulted in B&W owing some duties to plaintiffs. See *Genesee Foods Servs*, 279 Mich App at 656. Rather, the agreement between Concept and B&W stated that that Concept was "an independent contractor" and was "not an agent of B&W." Therefore, the trial court did not err by granting summary disposition in favor of B&W.

---

[5] Bohl admitted that no one at Concept said that Concept or any of its employees would warn or remind him when a policy was about to expire.

[6] In finding that no duty exists, the trial court relied on *Harts v Farmers Ins Exch*, 461 Mich 1; 597 NW2d 47 (1999), wherein the Supreme Court held that an insurance agent did not owe a duty to advise or counsel the insured. *Id*. at 2. There are two reasons why *Harts* does not apply to the present case. First, *Harts* addressed the particular duty "to advise or counsel an insured about the adequacy or availability of coverage." *Id*. This case does not involve that type of advice. Second, in *Harts*, the Court reasoned that a general no-duty-to-advise rule existed for insurance agents, but that rule was in the context of "an insurance agent whose principal is the insurance company." *Id*. at 8. Concept and Staton were independent agents, which made them agents of plaintiffs and not agents of Atain (or B&W). Consequently, *Harts* does not control this case, let alone stand for the proposition that independent agents, i.e., agents of the insured, bear no fiduciary duties to the insured. Regardless, we affirm because the trial court reached the correct result. *Edelberg v Leco Corp*, 236 Mich App 177, 181; 599 NW2d 785 (1999).

Additionally, while Concept and Staton sent reminders to Bohl before the expiration of the previous policies, there was no express agreement or promise to do so, and Bohl admitted that no one at Concept said that Concept or any of its employees would warn or remind him when a policy was about to expire. Therefore, even if the no-duty rule of *Harts* governed, there were no facts to suggest that any of the enumerated exceptions set forth in *Harts* would apply and impose a duty on Concept and Staton. Accordingly, summary disposition would have been warranted under *Harts*.

## V. REFORMATION

Plaintiffs argue that that the trial court erred when it ruled that their reformation claim was moot.  Because we conclude that the trial court properly allowed the rescission of the insurance contract, we also conclude that plaintiffs' claim for reformation is moot.  *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998)  (an issue is moot when an event occurs that renders it impossible for a court to grant relief).

## VI. CONCLUSION

The trial court properly granted summary disposition in favor of defendants.  Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle